**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ELNORA FREESE,

                 **Plaintiff,**

-vs-                                      **Case No.  6:06-cv-175-Orl-31JGG**

WUESTHOFF HEALTH SYSTEM, INC.,
LINDA CATINO, JOHN DOE I, JOHN
DOE II, JOHN DOE III,

                 **Defendants.**

---

# ORDER

The Plaintiff, Elnora Freese ("Freese") sued the Defendants, asserting a variety of claims arising out of her employment at Wuesthoff Health System, Inc. ("Wuesthoff"). (Doc. 16).[1] This matter is presently before the Court on Motions to Dismiss filed by Wuesthoff (Doc. 21) and Linda Catino ("Catino") (Doc. 22), and Freese's Memoranda in Opposition thereto (Docs. 25 and 26, respectively).

**I.      Background**

A. Facts

Freese is a white female and, at the time of the incidents of which she complains, was 63 years old. She was an employee of Wuesthoff within the meaning of the Age Discrimination in

---

[1] After Freese filed her Amended Complaint in Florida state court (Doc. 3), this case was removed to this Court (Doc. 1). In response to the Defendants' Motions to Dismiss (Docs. 6 and 7), Freese sought leave to amend her complaint to state her claims with greater specificity and to incorporate relevant documents (Doc. 12), which the Court granted. (Doc. 15). The Court notes, however, that the material allegations of Freese's Amended Complaint and Second Amended Complaint (Doc. 16), particularly as related to her age and gender discrimination claims and her breach of contract claim appear to be the same.

Employment Act, 29 U.S.C. section 621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, *et seq.* ("Title VII"), and the Florida Civil Rights Act, Florida Statutes section 760.01, *et seq.* ("FCRA").  Catino was a manager and Director of Patient Accounts for Wuesthoff.[2]

Freese began her employment with Wuesthoof on November 11, 2002, working at a hospital facility in Melbourne, Florida.  She had a history of "exemplary" work, received awards, and had never received any reprimands prior to the incidents that form the basis of her complaints.

On November 21, 2003, Wuesthoff accused Freese of taking an unscheduled break and departing from her work area without managerial/supervisory consent, and three days later, her supervisor, Te-Kisha Woods ("Woods") informed her that she had been seen smoking on November 21st in an "unauthorized area."[3]  Freese responded that she did not smoke, and thus could not have been seen smoking, but she was verbally reprimanded and an incident report was placed in her file.[4]  Freese refused to sign the report, because she felt it "was unjust and had no factual basis."  Freese then filed a Problem Solving Form/Grievance ("Grievance"), because she believed that management lacked certain facts in assessing her situation.

One hour after she filed the Grievance, she was told to confer with Catino.  Catino insulted Freese by stating that Freese was "old and slow," no one liked her, and she was "a big disappointment to" Catino.  Catino also told Freese, "[y]ou don't want to file that grievance," and

---

[2] Wuesthoff is a Florida corporation, and an employer within the meaning of the ADEA, Title VII, and FCRA.

[3] Freese asserts that the break was proper and authorized.

[4] Freese alleges that no adequate investigation was conducted prior to the report being filed.

threatened to terminate Freese's job if she did not cancel the Grievance.  Freese then cancelled the

Grievance because she feared for her job.  However, she then called George Fayer ("Fayer"),

Wuesthoff's Chief Financial Officer, and informed him of the comments Catino made.  Fayer did

not request additional input, nor did he conduct any further investigation into the incident.  When

Freese resumed her duties, she was removed from the collections department and reassigned to a

clerical position.

      At some point, Freese notified Woods that she (Freese) was scheduled to work alone on

two separate weekend shifts.  Woods told her that the personnel shortage would be corrected and

that Freese would not have to work alone.  However, despite Woods' assurances, Freese was

forced to work alone during both shifts, which were twelve-hour shifts with no breaks, and was

required to "perform exceptionally heavy work duties."

      Freese was isolated from other workers, and was forced to complete "unreasonable

workload assignments."  She complained to management about the situation, but her grievances

were ignored.  She was also repeatedly summoned to Wuesthoff's management offices and

"verbally reprimanded and censured for no reason at all or fabricated transgressions."  Freese made

Wuesthoff aware of the treatment she received, but no corrective action was taken.

      On December 1, 2003, Freese filed a two-weeks notice of her intent to resign her

employment with Wuesthoff.  In her notice, she indicated that she found the work environment

increasingly hostile as a result of the ongoing harassment she suffered.  She also indicated that she

was harassed for "the same issues tolerated in other employees."  One day later, she withdrew her

resignation notice and requested to be transferred to another department.  Then, on December 3,

2003, Freese was called to the Human Resources Department, where she was told that she was

being terminated for failing to have the annual physical evaluation performed.  However, she was then told that because she had an appointment for that exam scheduled for the following day, her employment would not be terminated.  Freese asserts that no male employees were threatened with termination, although many of them did not have their annual physical exam completed, nor did they have appointments scheduled to do so.

Freese was again summoned to the Human Resources Department on December 8, 2003, where Catino, Woods and Sharon Williams were present.  Catino told Freese, "no one liked you," that Catino had not recommended Freese for a departmental transfer, and that she was going to terminate Freese's employment effective immediately.[5]  Catino also stated that she was aware of, and upset about, Freese's conversation with Fayer.  Catino then said that she would accept Freese's resignation, on the condition that Freese withdraw her December 1st resignation notice and submit a new one without comments about a hostile work environment and harassment.  Catino also told Freese that she would forfeit 119 hours of paid time off if she did not agree with Catino's proposal.  Finally, Catino told Freese that if she made no further comments regarding workplace harassment, Catino would rehire her after January 1, 2004.  Based on Catino's statements, and because she desired to preserve her benefits, Freese signed a new resignation notice on December 8, 2003.

B. Claims and Arguments

Freese's Second Amended Complaint contains fourteen counts, all arising out of the manner in which she was allegedly treated while employed by Wuesthoff, and out of the

_____

[5] Catino's decision to terminate Freese denied Freese an opportunity for an internal promotion for which Freese was qualified and available to work.

circumstances surrounding the end of her employment.  She asserts claims for: age discrimination in violation of the ADEA (Count I) and FCRA (Count II); gender discrimination in violation of Title VII (Count III) and FCRA (Count IV); hostile working environment (Count V); retaliation in violation of the ADEA, Title VII and FCRA based on her age, gender and decision to file the Grievance (Count VI); breach of contract (Count VII); negligent supervision (Count VIII); negligent retention (Count IX); intentional infliction of emotional distress against Wuesthoff (Count X) and Catino (Count XI); fraud in the inducement against Wuesthoff (Count XII) and Catino (Count XIII); and constructive discharge (Count XIV).

Wuesthoff and Catino have moved to dismiss Freese's Second Amended Complaint, arguing that: (1) her claims for gender discrimination (Counts III, IV and V), as well as those claims related to gender discrimination (Counts VI and XIV), must be dismissed in whole or in part, as appropriate, because she did not exhaust her administrative remedies; (2) she has failed to state a claim for a hostile work environment (Count V); (3) her claim for retaliation (Count VI) fails because she did not engage in protected activity; (4) her breach of contract claim (Count VII) fails because employment policies do not constitute an enforceable contract; (5) her claims for negligent supervision (Count VIII) and negligent retention (Count IX) fail because they are not based on an injury resulting from a common law tort; (6) her claim for intentional infliction of emotional distress (Count X) does not meet the necessary threshold for such a claim; and (7) her fraudulent inducement claims (Counts XII and XIII) fail to demonstrate detrimental reliance.[6]

---

[6] The Defendants do not challenge Counts I and II.

## II.      Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id*. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it

rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

**III.     Legal Analysis**

A. Gender Discrimination

A plaintiff alleging gender discrimination in violation of Title VII must file an administrative complaint with the EEOC as a jurisdictional prerequisite to the Title VII action. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000); *see also Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1374 (M.D. Fla. 2002) ("Read together, [42 U.S.C.] § 2000e-5(e)(1) and (f)(1) impose an administrative exhaustion requirement in private Title VII suits.").  After filing an administrative complaint, the plaintiff's "judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1365 (S.D. Fla. 2001) (internal citation and quotation omitted).  However, "[a] Title VII action . . . may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . ." *Chanda*, 234 F.3d at 1225 (internal citation and quotation omitted).  In other words,

> [a]bsent some allegation of fact sufficient to put the defendant on notice of the nature and scope of the claim against it, the plaintiff is barred from asserting other types of claims in subsequent judicial proceedings that may bear some connection, however distinct, to the bare claim asserted in the EEOC charge.

*Gaston*, 129 F. Supp. 2d at 1365.  Therefore,

> [j]udicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate.  Allegations of new acts of discrimination, offered as the essential basis for the requested judicial relief, are not appropriate.

-7-

*Thompson*, 224 F. Supp. 2d at 1374.  Accordingly, if the plaintiff's allegations in her judicial

complaint "are reasonably related to charges in the administrative filing, and no material

differences between them exist, the court will entertain them."[7]  *Id.*

Freese's "Employment Charge of Discrimination," which she filed with the Florida

Commission on Human Relations and was, she alleges, forwarded to the EEOC, indicates that she

suffered from discrimination based upon "age" and "retaliation," based on the boxes she checked.

When asked to give particulars, she specifically wrote that she had

> been discriminated against pursuant to Chapter 70 of the Florida Civil Rights Act,
> and/or Title VII of the Federal Civil Rights Act, and/or the Age Discrimination in
> Employment Act, and/or the Americans with Disabilities Act as applicable:
> > 1) Age - at the time these events took place, I was Sixty-Two (62)
> > years of age.
> > 2) Retaliation - I believe I have been retaliated against by
> > management at Wuesthoff because I complained about workplace
> > conditions . . . .

(Doc. 21, Att. 2).  Nowhere in her charge does she make any allegations or statements that could,

even when construed entirely in her favor, even be considered hints, much less actual allegations,

of gender discrimination and retaliation.  Her allegations of gender discrimination and retaliation

in her Second Amended Complaint are entirely new and different allegations than those found in

her Employment Charge of Discrimination.  Therefore, Freese has failed to meet the jurisdictional

---

[7] Decisions construing Title VII are applicable when analyzing claims under FCRA, because FCRA was patterned after Title VII.  *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).  Courts have therefore applied the same standards for exhaustion requirements to both types of claims.  *See Prieto v. City of Miami Beach*, 190 F.Supp.2d 1340, 1343 n.2 (S.D. Fla. 2002) (after noting that the same standards govern Title VII and FCRA, finding that plaintiff's claims of gender discrimination in violation of Title VII and FCRA were barred for failure to make such allegations in EEOC charge).

prerequisite for the filing of Title VII and FCRA gender discrimination and retaliation claims, and

those claims will be dismissed.[8]

B. Hostile Work Environment

Freese alleges that Wuesthoff subjected her to a hostile work environment

because of Plaintiff's age, gender, and the written and oral complaints about supervisory harassment, which were met by Wuesthoff with repeated threats of job loss, verbal reprimands, intentional workplace isolation of Plaintiff, the assignment of unreasonable workloads, the misrepresentation of material facts regarding employment benefits to Plaintiff, the constructive discharge of Plaintiff and other adverse employment actions, all of which acted to alter the conditions of Plaintiff's employment . . . .

(Doc. 16 at 23).[9]  Wuesthoff argues that this claim should be dismissed because Freese's

allegations simply do not establish the existence of a hostile work environment.

A hostile work environment claim

is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, (11th Cir. 2002) (*quoting Harris v. Forklift*

*Sys., Inc.*, 510 U.S. 17, 21 (1993)).[10]  The Supreme Court has noted that "[h]ostile environment

---

[8] Accordingly, Counts III and IV will be dismissed, as will Count VI to the extent it relies on gender as a basis for retaliation.

[9] As the Court discussed previously, Freese's claims of gender discrimination are dismissed, and thus the Court will not consider gender as a basis for her claim of a hostile work environment, and instead will address her hostile work environment claim in terms of her allegations of age discrimination and retaliation.  Even if her gender-based claims were not due to be dismissed for her failure to satisfy the jurisdictional prerequisites, Freese has only alleged gender discrimination in a highly conclusory fashion, which is simply insufficient.

[10] Although that standard is one formulated in the context of Title VII, when "evaluating hostile work environment claims based on age, courts apply the same standards of Title VII claims." *Pumpido v. Sch. Bd. Of Miami-Dade County, Fla.*, 2003 WL 23312750, *9 (S.D. Fla. Nov. 6, 2003).

claims are different in kind from discrete acts. Their very nature involves repeated conduct," and

are based on the "cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 115 (2002). To establish a hostile working environment claim, a plaintiff must

show: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3)

the harassment must have been based on a protected characteristic of the plaintiff; (4) the

harassment was sufficiently severe or pervasive to alter the terms and conditions of employment

and create an abusive working environment; and (5) the employer is responsible for that

environment. *Miller*, 277 F.3d at 1275; *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245

(11th Cir. 1999).[11]

The determination of whether conduct was sufficiently severe or pervasive to alter a

plaintiff's terms or conditions of employment involves a subjective and an objective component.[12]

*Miller*, 277 F.3d at 1276; *Mendoza*, 195 F.3d at 1246. The Court presumes, based on her

allegations, that Freese subjectively found her working environment to be abusive, (*see* Doc. 16 at

8, 21-22), and thus the Court turns to the objective component of this analysis. The analysis of the

---

[11]

> To establish a hostile-work-environment claim based on retaliation, [a plaintiff] must
> show: (1) [s]he participated in a protected activity; (2) the employer committed some
> adverse-employment action; (3) there is a causal link between the protected activity
> and the adverse action; (4) assuming that the adverse action is not an ultimate
> employment decision, there was a serious and material change in the terms, conditions
> or privileges of [her] employment; and (5) the imposition of liability on the defendant
> employer is appropriate.

*Collier v. City of Opelika*, 374 F. Supp. 2d 1098, 1101 (M.D. Ala. 2004).

[12] The Supreme Court has "made it clear that conduct must be extreme to amount to a change
in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787
(1998).

objective severity of workplace harassment involves a totality of the circumstances approach, in which the Court considers a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Mere utterances of epithets engendering offensive feelings in an employee are not sufficient, and, instead, the conduct must be severe enough to create an environment that a reasonable person in the plaintiff's position, considering all the circumstances, would find hostile or abusive. *Id*. at 22; *Mendoza*, 195 F.3d at 1246. Freese has alleged that her work environment resulted in a constructive discharge, which the Supreme Court has indicated requires "something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); *see also Rogers-Libert v. Miami-Dade County*, 184 F. Supp. 2d 1273, 1286 (S.D. Fla. 2001) (noting that in ADEA case, standard for proving constructive discharge is higher than standard for proving hostile work environment).

Freese alleges that she was subject to a hostile work environment because: (1) she was threatened with the loss of her job; (2) she was retaliated against because of the Grievance she filed;[13] (3) Fayer took no corrective action when she complained to him; (4) she was "harassed and disciplined . . . for allegedly violating workplace policies and created (sic) false and pretextual

---

[13] Freese filed this Grievance in response to a situation where she was accused of taking an unscheduled break and smoking in an unauthorized area.

bases for doing so;"[14] (5) she was "selectively harassed and disciplined despite other employees routinely engaging in the same conduct that was considered improper by (sic) Plaintiff;" (6) she was forced to work alone and given unreasonable workloads; (7) there was a continual, systematic pattern of harassment, ridicule, retaliation and abuse of power;[15] (8) despite repeated complaints, no action was taken to address her situation; and (9) this conduct was "calculated to encourage Plaintiff to seemingly voluntarily terminate her employment."

At the outset, the Court notes that despite Freese's repetitious allegations of continual, repeated and systematic harassment and retaliation, she has only identified a total of six individual statements, (*see* n.15), and has provided no factual support for her allegations that she was reprimanded, censured or disciplined inappropriately.  Freese's allegations fail to satisfy three of the four factors the Court is to consider: she has not established that the conduct of which she complains occurred frequently and, instead, it appears that these were isolated incidents that occurred over the space of less than three weeks; the conduct was not physically threatening or humiliating; and she has failed to make even a conclusory allegation that the conduct interfered with her work performance.[16]  Thus, the Court will examine the remaining factor: the severity of the conduct in question.

---

[14] Freese alleges that she was "repeatedly verbally reprimanded and censured for no reason at all or fabricated transgressions," (*see* Doc. 16 at 8), but provides no factual support (by way of examples) for that allegation.

[15] The entirety of Freese's allegations concerning such conduct are that the following statements were directed at her: (1) she was "old and slow;" (2) she was twice told, "no one likes you;" (3) she was "a big disappointment to" Catino; (4) "[y]ou don't want to file that grievance!" and (5) she was threatened with job loss and retaliation if she did not cancel the Grievance.  (Doc. 16 at 6-9).

[16] Although she alleges that she was forced to shoulder "exceptionally heavy work duties" and "unreasonable workload assignments," she does not allege that she was unable to complete these assignments or that her performance suffered as a result.

Ultimately, Freese's claims boil down to several insulting comments, a single threatening retaliatory comment, discipline and "harassment" which she believes was unfair and unwarranted, an increased workload, and the failure to respond to her complaints. These allegations simply do not establish the existence of an environment that was so intolerable that a reasonable person would have been forced to leave.[17]  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal citation and quotations omitted); *Harris v. Equifax, Inc.*, 2006 WL 819757, *8 (N.D. Ga. Mar. 23, 2006) (allegations that supervisor screamed at plaintiff, called plaintiff "old," and told plaintiff that he was unable to adopt to job changes did not constitute severe or pervasive conduct); *Rogers-Libert*, 184 F. Supp. 2d at 1286-87 (no constructive discharge/hostile work environment where plaintiff alleged failure to receive all due administrative leave, repeated phone calls when away from her office, repeated interruptions for non-urgent matters, and irrational deadlines that caused her stress).  Accordingly, Freese's hostile work environment claim (Count V) will be dismissed.

C. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity.  *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998).  To engage in protected activity,

---

[17] The fact that Freese did not like her working environment, or even that she felt unwanted and unappreciated and conspired against, does not mean that the environment was actually hostile or abusive. *Rogers-Libert*, 184 F. Supp. 2d at 1286 (plaintiff's objective feelings are irrelevant).

an employee must demonstrate that she had a good faith reasonable belief that the employer was engaged in unlawful employment practices, *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002), and must, "at the very least, communicate her belief that discrimination is occurring to the employer.  It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred."  *Webb v. R&B Holding Co., Inc.*, 992 F. Supp. 1382, 1390 (S.D. Fla. 1998).     To establish the causal link requirement, which the Eleventh Circuit has indicated must be construed broadly, a plaintiff need only establish that "the protected activity and the negative employment action are not completely unrelated."  *Alford v. Florida*, 390 F. Supp. 2d 1236, (S.D. Fla. 2005) (internal citation and quotation omitted).  A plaintiff may do so simply by demonstrating that the decision-maker became aware of the protected activity, and that there was a close temporal proximity between when the supervisor learned of the protected activity and the adverse employment action.  *Id*.

Read in the light most favorable to Freese, her allegations establish the following: (1) she filed a Grievance regarding certain disciplinary acts, after which she met with Catino; (2) at that meeting, Catino made a negative reference to Freese's age; (3) Freese then called Fayer to complain about, *inter alia*, Catino's negative reference to her age; (4) Fayer did not respond; (5) Freese was subsequently reassigned, saddled with heavy workloads, and received reprimands; (6) Catino was aware that Freese had contacted Fayer; (7) her communication with Fayer resulted in subsequent harassment and difficult working conditions; and (8) ultimately she was denied an opportunity for promotion.  Drawing all inferences in Freese's favor, she has set forth sufficient allegations to survive a motion to dismiss.

Her retaliation claim will, however, be limited to the circumstances surrounding her complaint to Fayer about Catino's age comment.  As the Court has already determined, her retaliation claim, to the extent it is based on gender, is barred.  (*See* Section III(A), *supra*). Further, her retaliation claim will be dismissed to the extent it relies on her "decision to file a Problem Solving Form/Grievance," inasmuch as that conduct does not constitute protected activity.  Freese plainly alleges that she filed that Grievance in response to a situation in which she felt that she had been disciplined unfairly for taking a break and smoking in an unauthorized area. A complaint about treatment or discipline, unrelated to statutorily-protected matters, does not constitute protected activity, and thus cannot serve as the basis for a retaliation claim.  *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, (3rd Cir. 1995) (letter complaining of unfair treatment and expressing dissatisfaction that another employee was awarded a position did not translate into charge of illegal discrimination); *Marcelin v. Eckerd Corp. of Fla., Inc.*, 2006 WL 923745, *9 (M.D. Fla. Apr. 10, 2006) (plaintiff who did not expressly complain about discrimination did not put employer on notice of violation and therefore did not engage in protected activity); *Bicknell v. City of St. Petersburg*, 2006 WL 560167, *5 (M.D. Fla. Mar. 7, 2006) (complaints about assault, light duty status and doctor's evaluation were made prior to EEOC complaint and prior to any other charge regarding discriminatory employment practices, and thus were not protected activity); *Alford*, 390 F. Supp. 2d at 1253 (complaints about new responsibilities and supervisors making changes to time sheets lacked allegations of discrimination, and thus did not constitute protected expression).

D. Breach of Contract

Freese asserts that: (1) Wuesthoff "promulgated express and written statements of employment policies, practices and procedures," and "disseminated an Administrative Policy and

Procedure Manual which detailed the purpose and procedure of utilizing Wuesthoff's problem

solving forms;" (2) the promulgation of these policies and procedures manifested Wuesthoff's

willingness to enter into a bargain; (3) Freese accepted Wuesthoff's offer regarding those policies

and procedures by accepting employment by written and oral representations; and (4) Wuesthoff

breached that contract by failing to follow those practices and procedures.

Both Florida courts and federal courts interpreting Florida law have recognized that

> [i]t is well established Florida law that policy statements contained in employment
> manuals do not give rise to enforceable contract rights in Florida unless they
> contain specific language which expresses the parties' explicit mutual agreement
> that the manual constitutes a separate employment contract.

*Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576-77 (Fla. 5th DCA 2002); *see also Osten v. City of*

*Homestead*, 757 So.2d 1243, 1244-45 (Fla. 3rd DCA 2000); *Caster v. Hennessey*, 727 F.2d 1075,

1077 (11th Cir. 1984); *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1352 (S.D. Fla.

2004); *Rumbel v. Suggs*, 908 F. Supp. 901, 904 (M.D. Fla. 1995).  Not only do Wuesthoff's

publication on Employee Relations and its Administrative Policy and Procedure Manual clearly

identify the problem solving procedures as policies, (*see* Doc. 18, Atts. 3, 4), but the Employee

Guidebook specifically states, "this handbook and the policies mentioned are not contracts, nor is

your right or Wuesthoff's right to terminate employment at will in any way limited."  (Doc. 21,

Att. 3 at 1).  Therefore not only do these manuals lack language identifying them as formal

agreements, but they contain language explicitly disavowing their status as contracts.  *See Rumbel*,

908 F. Supp. at 904 (granting motion to dismiss where, *inter alia*, personnel manual explicitly

provided that manual was not contractually binding).  Freese's arguments attempting to transform

these policies into contracts have been clearly rejected by courts interpreting Florida law, *see, e.g.,*

*Quaker Oats*, 818 So. 2d at 576-78,[18] and her attempts to salvage this claim border on frivolous.[19]

Count VII will be dismissed.

> E. Negligent Supervision and Negligent Retention

In these two claims, Freese alleges that: (1) Wuesthoff owed a duty to its employees to prevent other employees from harming their co-employees; (2) Wuestoff was aware that its managerial and supervisory personnel harassed and discriminated against Freese on the basis of her age, gender and her actions in opposing certain employment practices; and (3) Wuesthoff breached its duty by failing to supervise its employees so as to prevent such harassment and discrimination.

Under Florida law, "negligent supervision and retention occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicates his unfitness and the employer fails to take further action such as investigation, discharge, or reassignment." *Martinez v. Pavex Corp.*, --- F.Supp.2d ----, 2006 WL 723482, *11 (M.D. Fla. Mar. 22, 2006).  Liability will thus attach when an employer knew or

---

[18]

> [I]n the absence of language in the employee manual expressly providing that the manual constitutes a separate employment agreement, or the parties' explicit mutual agreement to that effect, policy statements in the employment manual do not constitute the terms of a contract of employment.

*Quaker Oats*, 818 So. 2d at 578.

[19] Indeed, Freese even attempted to rely on language in the *Quaker Oats* case to support her position.  However, not only did she take the quoted language out of context in doing so, but she actually creatively reconstructed the "quoted" language of the case in an apparent attempt to mold it in her favor.  Without deciding whether she has crossed certain lines in this argument, the Court reminds counsel that the limits set by Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 are real, as are the consequences for violating them.

should have known about the offending employee's unfitness and failed to take the appropriate

action.  *Id.*  The "underlying wrong allegedly committed by an employee in a negligent supervision

or negligent retention claim must be based on an injury resulting from *a tort which is recognized*

*under common law*."  *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D.

Fla. 1999) (emphasis supplied).

Freese's claims stem from the failure of Wuesthoff to correct a situation in which Freese

alleges that supervisors and employees harassed and discriminated against her in violation of Title

VII, the ADEA and FCRA.[20]  These are not common law causes of action.  *See Castleberry v.*

*Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 (Fla. 1st DCA 2002) ("Florida does not

recognize a common law cause of action for negligent failure to maintain a workplace free of

sexual harassment;" affirming summary judgment on negligence claims based on employees'

propensity to act in sexist, harassing and retaliatory manner); *McElrath v. Burley*, 707 So. 2d 836,

839 (Fla. 1st DCA 1998) (claims of employment discrimination and retaliatory discharge did not

exist at common law); *Hullinger v. Ryder Truck Rental, Inc.*, 548 So.2d 231, 233 (Fla. 1989) ("We

know of no common law cause of action for wrongful discharge because of age."); *Hipp v. Liberty*

*Nat'l Life Ins. Co.*, 39 F.Supp.2d 1359, 1365 (M.D. Fla. 1999) ("There was no common law cause

of action for age discrimination . . . until the Florida Legislature created one.").  Further, "in order

---

[20] In her Memoranda, Freese argues that the negligent supervision and retention claims are based on the common law torts of fraudulent inducement and intentional infliction of emotional distress.  The language of Counts VIII and IX belies this argument, because those Counts do not contain any reference to those torts, and instead focus solely on harassment, discrimination and retaliation related to Freese's age, gender and participation in protected activity.  In any event, her argument in this regard must fail, as the Court has determined that she has failed to state claims for intentional infliction of emotional distress and fraudulent inducement.  (*See* Sections III(F) and (G), *infra*).

to recover damages for emotional distress caused by the negligence of another, a plaintiff must comply with Florida's impact rule," under which "the emotional distress complained of must flow from a physical injury sustained by physical impact." *Scelta*, 57 F. Supp. 2d at 1348.  Freese has alleged neither physical injury nor physical impact, and thus her negligence complaints must be dismissed on this ground as well.  *See id*.; *see also Perez v. Pavex Corp.*, 2002 WL 31500404, *4-5 (M.D. Fla. Oct. 18, 2002) (claims for negligent hiring, supervision and retention subject to dismissal where plaintiffs alleged damages as result of defendant's failure to maintain workplace free of racial discrimination, harassment and retaliation, but failed to allege injury as a result of physical impact).  Accordingly, Counts VIII and IX will be dismissed.

F. Intentional Infliction of Emotional Distress

Florida law recognizes the

tort of intentional infliction of emotional distress but requires the conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Rumbel*, 908 F. Supp. at 903 (*quoting Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985)).  To state a cause of action for intentional infliction of emotional distress, the plaintiff must show that: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. Worldwide Flight Servs. Inc.*, 877 So. 2d 869, 870 (Fla. 3rd DCA 2004).  "Florida law imposes a very high standard on a plaintiff alleging intentional infliction of emotional distress in the employment realm," and strongly disfavors this type of claim in the employment context. *Scelta*, 57 F. Supp. 2d at 1357-58.  Whether the conduct in question meets this high

standard is a question of law to be decided by the courts.  *Id.* at 1358; *Rumbel*, 908 F. Supp. at 903; *De La Campa v. Grifols America, Inc.*, 819 So. 2d 940, 943 (Fla. 3rd DCA 2002).  Conduct such as "mere insults, indignities, threats, or false accusations," will not result in liability.[21]  *Williams*, 877 So. 2d at 870; *see also De La Campa*, 819 So. 2d at 944 (courts are reluctant to find intentional infliction of emotional distress based solely on verbal abuse).

Freese alleges that: (1) Wuesthoff and Catino intentionally subjected her to harassment, discrimination, misconduct and a hostile work environment because of her age, gender and participation in protected activities; (2) she suffered repeated threats of job loss, reprimands, isolation, unreasonable assignments, the misrepresentation of material facts regarding benefits (specifically, paid time off); and (3) she was constructively discharged.  This type of conduct does not even approach the required threshold of conduct that is outrageous, extreme, atrocious and utterly intolerable.[22]  *See De La Campa*, 891 So. 2d at 944 (plaintiff failed to establish claim where she alleged severe and pervasive pattern of sexual harassment because of her sexual orientation, including: derogatory remarks, abusive acts and conduct directed at her because of her orientation

---

[21] However, "courts interpreting Florida law have allowed claims for intentional infliction of emotional distress in the workplace to go forward, where the claims involve persistent verbal abuse coupled with repeated offensive physical contact."  *De La Campa*, 819 So. 2d at 944 (emphasis supplied).  Freese has made no allegations of physical contact.

[22] Not only does the Court question whether this claim could even be made in good faith in this case, but the Court notes further that in defending this claim, Freese again strains the bounds of acceptable advocacy with two arguments.  First, she asserts that the nature of the conduct, not the location where it occurs should be controlling, and that Wuesthoff's cites to cases involving intentional infliction of emotional distress in the employment context should not control.  Second, she asserts that whether she has stated a claim is a question of fact. She makes both of these arguments in the face of clearly applicable case law that is directly contrary to the positions she espouses.  As this case proceeds, counsel are advised to be more circumspect in the arguments made in support of their positions.

and because she asserted her right to work free from discrimination, threats of termination, and

exclusion from corporate social functions); *Williams*, 877 So. 2d at 870 (plaintiff failed to state

claim where he alleged that supervisors directed racial slurs at him in front of other employees,

constructed records of false disciplinary incidents, did not allow him to work with other employees

of same race, falsely accused him of stealing, persistently threatened him with job termination for

no apparent reason, required him to perform dangerous work, and eliminated his break times).

Accordingly, Counts X and XI will be dismissed.

> G. Fraud in the Inducement

To state a claim for fraud in the inducement, a plaintiff must allege:

> (1) a misrepresentation of a material fact; (2) that [the] maker of the
> misrepresentation knew or should have known of the statement's falsities; (3) intent
> by the maker of the statement that the representation induce another to rely and act
> on it; and (4) resulting injury to the party acting in justifiable reliance on the
> representation.

*Palumbo v. Moore*, 777 So. 2d 1177, 1179 (Fla. 5th DCA 2001); *see also Samuels v. King Motor*

*Co. of Fort Lauderdale*, 782 So. 2d 489, 497 (Fla. 4th DCA 2001).

To support her claim of fraudulent inducement, Freese alleges that: (1) on December 8,

2003, Catino told Freese that she (Catino) was going to terminate Freese's employment

immediately; (2) Catino then stated that she would accept Freese's resignation on the condition

that Freese withdraw her December 1, 2003 resignation notice and submit another notice without

comments about the environment and harassment; (3) Catino told Freese that if she submitted a

new resignation notice, (a) she would be paid for one hundred nineteen hours of paid time off,

which Freese would otherwise forfeit if her employment were terminated, and (b) Catino would

rehire her after January 1, 2004; (4) the one hundred nineteen hours of paid time off were not

subject to forfeiture, but the Defendants intentionally misrepresented that fact to induce Freese to provide a new resignation notice; (5) had she known the true facts, she would not have signed the December 8, 2003 resignation notice; and (6) she was harmed because she lost income as a result of her resignation.

Freese's argument in this regard appears to rely on the assumption that if she had not submitted a resignation notice, she would have been able to keep her job, and she thus appears to insinuate that Catino's original statement regarding termination was false and was only made in order to get Freese to quit. Her own allegations, however, demonstrate that Catino stated that she was going to terminate Freese's employment but that she would accept Freese's resignation. Freese makes no attempt to demonstrate that Catino's original statement regarding termination was false and was made with the intent to induce Freese to rely thereupon. At no point does Freese allege or argue that Catino did not, in fact, intend to terminate her employment. Therefore, she has failed to establish the first two elements of a claim for fraudulent inducement, and thus Counts XII and XIII will be dismissed.

H. Constructive Discharge

The Defendants do not make substantive arguments against this claim, arguing instead that to the extent this claim relies on gender discrimination it should be dismissed, and that this claim violates Federal Rules of Civil Procedure 8 and 10 by mixing claims and "making it difficult to discern the basis of each claim." Without addressing the merits of the Defendants' arguments, in light of the Court's dismissal of Freese's gender discrimination and hostile work environment claims (upon which the constructive discharge claim is based in no small part), this claim (Count XIV) will be dismissed as well, so that Freese can tailor her allegations appropriately.

**IV.**     **Conclusion**

For the reasons stated herein, it is

**ORDERED THAT** the Defendants' Motions to Dismiss are GRANTED in part and

DENIED in part, as follows: Counts III, IV, V, and VII through XIV are dismissed in their entirety;

and Count VI is dismissed to the extent that it relies on gender and the filing of the Grievance as a

basis for that claim.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 19, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party